UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

In re

SANDRINE'S LIMITED LIABILITY COMPANY,

Debtor.

Chapter 11
Case No. 14-_____

**DEBTOR'S MOTION FOR ENTRY OF ORDER: (I) AUTHORIZING
DEBTOR TO OBTAIN POSTPETITION FINANCING; (II) GRANTING LIENS,
SECURITY INTERESTS AND SUPERPRIORITY STATUS;
AND (III) SCHEDULING FINAL HEARING**
**(Emergency Determination Requested)**

NOW COMES Sandrine's Limited Liability Company, the chapter 11 debtor and debtor-in-possession herein (the "Debtor"), and hereby moves this Court for entry of an interim order (the "Interim Order"), and then, after a final hearing on this Motion (the "Final Hearing"), a final order (the "Final Order", and together with the Interim Order, the "Financing Orders") authorizing the Debtor to: (i) obtain secured postpetition financing on a superpriority basis, with administrative superpriority and secured by senior, priming liens in substantially all assets of the Debtor pursuant to section 364(c)(l), (c)(2), and (d) of the Bankruptcy Code; and (iii) scheduling a final hearing on this Motion. In support of this Motion, the Debtor represents as follows:

**Background**

1.  On December 10, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (Eastern Division).

2.	The Debtor continues to act as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee has been appointed in these proceedings.  No Creditors' Committee has been formed.

3.	The Debtor operates its restaurant business at 8 Holyoke Street, Cambridge, Massachusetts.  The Debtor is a corporation duly formed and existing under the laws of the Commonwealth of Massachusetts.

4.	Gwyneth B. Trost is the Manager of the Debtor.  Ms. Trost and another individual, Amy Nomejko, are the sole interest holders and members of the Debtor.

5.	The Debtor's operations, debt structure, and the challenges that led to its bankruptcy filing are all discussed in greater detail in the *Affidavit of Gwyneth B. Trost, Manager of the Debtor, in Support of Chapter 11 Petition and First-Day Pleadings* (the "Trost Affidavit") filed contemporaneously herewith.

6.	As set forth in the Trost Affidavit, the Debtor has recently experienced increasing financial difficulty, including the disaffection of one of its founders.  The Debtor consequently began to experience declining revenue each year, culminating in a net loss of approximately $39,000 in 2013, and an estimated loss of more than $200,000 in projected for 2014.

7.	Upon information and belief and with a full reservation of all rights regarding, among other things, defenses, setoff rights and potential avoidance claims, in accordance with MLBR 6004-1(a)(2)(A), the creditors that hold security interests in the assets of the Debtor are set forth below.  The Debtor conducted a recent review of the records of the UCC-1 financing statements at the Office of the Massachusetts Secretary of the Commonwealth, state and federal tax lien searches and a search of the Clerk's Office in Cambridge.

8.	The following is a summary of the liens of record:

| Creditor | Lien Recording Date | Approximate Total Secured Portion of Claim |
|---|---|---|
| Cambridge Trust Company | 4/14/2006<br>8/2/2010<br>4/7/2011 | $104,780.01 |
| Corporation Service Company[1] | 11/21/2013 | $0.00 |
| Rewards Network Establishment Services, Inc. | 11/22/2013 | $67,999.12 |
| American Express Bank, FSB | 12/23/2013 | $29,156.01 |
| Marlin Business Bank | 4/24/2014 | $50,621.64 |
| Massachusetts Department of Revenue[2] | 3/17/2014<br>8/2/2014 | $0.00 |
| **TOTAL:** | | **$252,556.78** |

9.     With a full reservation of rights regarding validity, allowability, perfection issues, and any and all defenses, assuming the above-noted secured claims are determined to be allowable, the Debtor expects that the Purchase Price described above will be sufficient to satisfy the claims of the secured creditors identified above.

10.    Management realized that in order to preserve the value of the Debtor's business, a sale represented the best opportunity. The Debtor was approached by Pierre Honneger, owner of La Voile of Boston. Mr. Honneger was seeking to expand his restaurant concept to Cambridge. Sandrine's, with its well established location and remaining reputation for excellence, suited Mr. Honneger's needs perfectly.

11.    Due to the Debtor's financial condition, it was determined that a sale of the business could best be accomplished through a chapter 11 bankruptcy proceeding. The Debtor's liabilities currently exceed its assets, and the Debtor had recently entered a cash-flow crisis. In

---

[1] The obligation to Corporation Service Company has been satisfied in full.
[2] The obligations to Massachusetts Department of Revenue underlying these liens have been satisfied in full.

3

order to remain operating during the negotiation of the sale and the administration of a chapter 11 proceeding, the Debtor need a rapid influx of funding. Without such funding, the Debtor would be unable to meet its payroll obligations, pay vendors, or continue to operate and thereby preserve its going concern value.

12. The Debtor therefore entered into an agreement with Mr. Honneger to fund the Debtor's operations both prior to and during the bankruptcy filing. Mr. Honneger, together with entities controlled by him, contributed funds as follows:

    a.    Pierre Honegger:    $143,043.76

    b.    Bato, Inc.:    $123,501.55

    c.    Chantal Rowat:    $88,690.82

Funding provided as of the Petition Date totaled approximately $355,236.13. Mr. Honneger also committed to provide an additional $100,000 through a Court-approved debtor-in-possession loan facility (the "DIP Facility").

13. The parties entered into a written Liquor License and Lease Purchase Agreement (the "Agreement"), whereby Bato Catering, Inc. (the "DIP Lender"), agreed to purchase substantially all of the Debtor's assets for the following consideration:

    a.    cash at closing in the amount of $480,000 (the "Purchase Price");

    b.    waiver of the DIP Lender's prepetition claims totaling at least $355,236.13; and

    c.    waiver of any repayment of the DIP Facility in the amount of $100,000.

The Debtor accordingly values the purchase price at least $580,000 (the cash portion together with the waiver of the DIP Facility amount), plus the value of the prepetition claim that is being waived.

4

14. Absent the funding provided under the DIP Facility, the Debtor would be unable to continue its operations, jeopardizing the status and drastically reducing the value of the Lease and the Liquor License. Accordingly, the Debtor seeks authority to borrow the DIP Facility to fund its postpetition operations until such time as the proposed sale can be consummated.

## Summary of Requested Relief

15. The Debtor seeks entry of the Interim and then, after the Final Hearing, the Final Order, each of which, *inter alia*:

    a.    authorizes the Debtor to enter into the DIP Financing Agreement and obtain funding under the DIP Facility pursuant to section 364(c)(1), (c)(2), and (d)(1) of the Bankruptcy Code and the terms of the DIP Financing Agreement;

    b.    grants related relief.

16. In addition, the Debtor requests that the Court: (i) schedule a Final Hearing, pursuant to Federal Rule of Bankruptcy Procedure 4001, to consider entry of the Final Order; and (ii) approve the Debtor's proposed notice procedures with respect to the Final Hearing.

## Basis for Relief

**A.**    **The DIP Facility Should Be Approved**

17. The Debtor has an emergency need to obtain financing as proposed herein to operate its restaurant business and to preserve the going concern value of the assets, and thereby avoid immediate and irreparable harm to the Debtor's estate and creditors.

    **1.**    **The Post-Petition Financing**

18. Pursuant to the DIP Facility, the DIP Lender will advance a principal amount of at least $100,000.

5

19. The proceeds of the borrowings under the DIP Facility will be used by the Debtor to pay the expenses incurred in the ordinary course of its business during the pending bankruptcy and sale process.

20. The Debtor has agreed, subject to Court approval, to secure its obligations to the DIP Lender under the DIP Financing Agreement by granting senior, priming security interests in, and liens on, substantially all of the Debtor's assets. A copy of the proposed DIP Financing Agreement is attached hereto as *Exhibit A*.

21. The Debtor's obligations under the DIP Financing Agreement will be secured by priming liens, as contemplated by the Bankruptcy Code, (the "Postpetition Liens") pursuant to section 364(d) of the Bankruptcy Code on, and security interests in, all of the Debtor's assets.

22. Specifically, in accordance with section 364 of the Bankruptcy Code, all advances pursuant to the DIP Financing Agreement shall be secured as follows:

   a. Pursuant to section 364(c)(1) of the Bankruptcy Code, perfected first priority, senior secured interests in and liens upon all assets with a priority over any and all administrative expenses of the kind specified in sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 503(c), 507(a) 546(c), 726 and/or 1114 of the Bankruptcy Code (such priority, the "Superpriority Administrative Expense Claim");

   b. Pursuant to section 364(c)(2) of the Bankruptcy Code, perfected first priority, senior security interests in and liens upon all assets not currently subject to any lien; and

   c. Pursuant to section 364(d)(1) of the Bankruptcy Code, a priming, perfected first priority secured interest in and liens upon all assets.

23. Additionally, the Debtor shall not pay any costs or expenses not specified in the projected budget attached hereto (the "Budget"), and shall not pay any single itemized expense which is in excess of 110% of the amount set forth in the Budget, whether by line item or in the

aggregate, absent express consent of the DIP Lender. A copy of the Budget is attached hereto as *Exhibit B*.

24. To the extent that any prepetition secured creditor asserting an interest in the assets has not specifically consented to this Motion, such creditor is deemed to be adequately protected by virtue of the preservation of the Debtor's going-concern value.

**2.  Applicable Authority**

25. Pursuant to section 364 of the Bankruptcy Code, "[i]f the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien." 11 U.S.C. § 364(c).

26. Moreover, pursuant to section 364, "[t]he court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—(A) the trustee is unable to obtain such credit otherwise; and (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d)(1).

27. Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") governs the use of postpetition financing and provides that the Court may authorize a trustee or debtor-in-possession to obtain postpetition financing on a final basis after a hearing on at least fourteen days' notice, and may authorize a trustee to obtain interim postpetition financing

"to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing" on less than fourteen days' notice.

### 3. Analysis

28. The DIP Lender will not make the DIP Facility available to the Debtor absent superpriority priming liens pursuant to section 364(d) of the Bankruptcy Code, and superpriority administrative claims pursuant to section 364(c)(1). Moreover, the DIP Lender would not consent to the granting of any priming lien to any other third party. In light of the facts and circumstances of this case, the Debtor does not believe that he would be able to obtain postpetition financing solely pursuant to sections 364(b) or (c).

29. The Debtor has, prior to the Petition Date, made significant efforts to secure additional financing or additional investors. Despite such attempts, the Debtor has been unable to secure financing, or investors, other than the DIP Lender.

30. Without the DIP Facility, the Debtor will lack the funds to maintain the estate's assets, and conduct its restaurant business, including paying vendors, employees and other claims, during chapter 11 proceeding and proposed sale process. The DIP Facility will enable the Debtor to compensate its employees, pay its postpetition creditors and vendors, and conduct its business during the sale process. By continuing to operate the business during the sale process, the Debtor will be able to maximize the value of that business and its assets. Therefore, without the DIP Facility, the Debtor's estate and creditors will suffer irreparable harm.

31. Due to the immediate need for operating capital, and the exigencies that the Debtor faces, the Debtor believes that it would not be able to obtain postpetition financing on better terms under section 364(d)—if at all—in time to prevent a precipitous decline in the value of the estate's assets by ceasing all operations.

32. The Debtor recognizes that the DIP Financing Agreement grants the DIP Lender priming liens pursuant to section 364(d) of the Bankruptcy Code. For all practical purposes, the prepetition secured creditors have little hope of recovery without the Debtor obtaining funds to run the sale process. If the sale process were to fail, these creditors would almost certainly see little to no recovery.

33. Because the prepetition secured creditors have no realistic hope for a significant recovery under any other plausible scenario, the Debtor submits that their present interests will not diminish as a result of entry into the DIP Financing Agreement. On the contrary, these creditors stand only to benefit from the Debtor's entering into the DIP Financing Agreement.

34. Consequently, the Debtor submits that obtaining the DIP Financing Agreement would be in the Debtor's, the estate's, and creditors' best interests, and should be approved.

**B.     Need for Interim Approval and Scheduling of Preliminary Hearing**

35. Massachusetts Local Bankruptcy Rule 4001-2 provides, in pertinent part, "[t]he Court may enter an Interim Preliminary Order authorizing use of cash collateral or borrowing, or a stipulation relating to same only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." MLBR 4001-2(e)(2).

36. Having interim access to the DIP Facility is necessary to enable the Debtor to protect its assets from diminution in value and, consequently, would benefit the estate. Accordingly, the Debtor's proposed interim relief is necessary to avoid immediate and irreparable harm.

37. The Debtor requests, therefore, that the Court conduct an expedited preliminary hearing on this Motion and approve (from and after entry of the Interim Order and pending the Final Hearing) the relief requested herein on an interim basis so that the Debtor may, among

other things, meet its current obligations, including payroll, maintain and preserve the estate's assets, and begin preparing for the sale process.

**C.     Request for Final Hearing**

38.     The Debtor requests that the Court schedule the Final Hearing for a date as soon as reasonably practicable following entry of the Interim Order.

WHEREFORE, the Debtor requests that this Court enter an Order:

- a. entering the Interim Order authorizing, *inter alia*, the Debtor to obtain financing pursuant to the DIP Facility on an emergency interim basis through the conclusion of the Final Hearing on the terms set forth herein and in the DIP Financing Agreement;

- b. entering a Final Order authorizing the Debtor to obtain financing under the DIP Facility on a permanent basis on the terms set forth herein and in the DIP Financing Agreement;

- c. granting all related relief requested in this Motion; and

- d. granting the Debtor such other and further relief as just and necessary.

Respectfully submitted,

SANDRINE'S LIMITED LIABILITY COMPANY,
Chapter 11 Debtor-in-Possession,

By its attorneys,

/s/ Alex F. Mattera
Alex F. Mattera, BBO No. 641760
Demeo, LLP
200 State Street
Boston, MA  02109
Telephone:  (617) 263-2600
Facsimile:   (617) 263-2300
Email:         AMattera@DemeoLLP.com

Dated:  December 10, 2014