UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re<br><br>SANDRINE'S LIMITED LIABILITY COMPANY,<br><br>Debtor. | Chapter 11<br>Case No. 14-_____ |

**DEBTOR'S MOTION FOR: (I) APPROVAL OF SALE PROCEDURES; AND (II) ENTRY OF AN ORDER AUTHORIZING (A) PRIVATE SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; AND (B) ASSUMPTION AND <u>ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS</u>**
**(Expedited Determination Requested Regarding Sale Procedures)**

Sandrine's Limited Liability Company, the chapter 11 debtor and debtor-in-possession herein (the "Debtor"), hereby requests authority to sell by private sale ("Private Sale") all of the Debtor's right, title and interest in substantially all assets used and useful in the operation of the Debtor's business (the "Assets"), and assumption and assignment of certain executory contracts, as further described in the Notice of (A) Intended Private Sale of Substantially All Assets Used and Useful in the Operation of the Debtor's Business and (B) Assumption and Assignment of Certain Executory Contract ("Sale Notice") filed herewith, and in the Liquor License and Lease Purchase Agreement (the "Agreement") attached hereto as *Exhibit A*. The Debtor also seeks approval of the form of Sale Notice and the sale procedures (the "Sale Procedures") set forth in and attached hereto as *Exhibit B*, and as set forth in this Motion. The proposed buyer is Bato Catering, Inc. (the "Purchaser").

The Debtor further requests that the Private Sale be free and clear of all claims, liens, interests, and encumbrances asserted by any entity, with any such interest in the Assets, when

established, attaching to the proceeds realized from the sale of the Assets in the same order of priority subject, if necessary, to a later determination by the Bankruptcy Court of the validity, extent, perfection and amount of such interest, and any such interest shall be subordinated to any and all necessary administrative costs and expenses in connection with the Private Sale, including the compensation of expenses of the Debtor, the Debtor's counsel and all administrative expenses incurred in connection with the sale of the Assets.

In support of the Motion, the Debtor relies upon and fully incorporates herein by reference the *Affidavit of Gwyneth B. Trost, Manager of the Debtor, in Support of Chapter 11 Petitions and First-Day Pleadings* (the "Trost Affidavit"), filed with the Court concurrently herewith.

In further support of this Motion, the Debtor represents as follows:

**Background**

1. On December 10, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (Eastern Division).

2. The Debtor continues to act as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No Trustee has been appointed in these proceedings. No Creditors' Committee has been formed.

3. The Debtor operates its restaurant business at 8 Holyoke Street, Cambridge, Massachusetts. The Debtor is a corporation duly formed and existing under the laws of the Commonwealth of Massachusetts.

4. Gwyneth B. Trost is the Manager of the Debtor. Ms. Trost and another individual, Amy Nomejko, are the sole interest holders and members of the Debtor.

5. The Debtor's operations, debt structure, and the challenges that led to its bankruptcy filing are all discussed in greater detail in the *Affidavit of Gwyneth B. Trost, Manager of the Debtor, in Support of Chapter 11 Petition and First-Day Pleadings* (the "Trost Affidavit") filed contemporaneously herewith.

6. As set forth in the Trost Affidavit, the Debtor has recently experienced increasing financial difficulty, including the disaffection of one of its founders. The Debtor consequently began to experience declining revenue each year, culminating in a net loss of approximately $39,000 in 2013, and an estimated loss of more than $200,000 in projected for 2014.

7. Management realized that in order to preserve the value of the Debtor's business, a sale represented the best opportunity. The Debtor was approached by Pierre Honneger, owner of La Voile of Boston. Mr. Honneger was seeking to expand his restaurant concept to Cambridge. Sandrine's, with its well established location and remaining reputation for excellence, suited Mr. Honneger's needs perfectly.

8. Due to the Debtor's financial condition, it was determined that a sale of the business could best be accomplished through a chapter 11 bankruptcy proceeding. The Debtor's liabilities currently exceed its assets, and the Debtor had recently entered a cash-flow crisis. In order to remain operating during the negotiation of the sale and the administration of a chapter 11 proceeding, the Debtor need a rapid influx of funding. Without such funding, the Debtor would be unable to meet its payroll obligations, pay vendors, or continue to operate and thereby preserve its going concern value.

9. The Debtor therefore entered into an agreement with Mr. Honneger to fund the Debtor's operations both prior to and during the bankruptcy filing. Mr. Honneger, together with entities controlled by him, contributed funds as follows:

  a.  Pierre Honegger:  $143,043.76

  b.  Bato, Inc.:  $123,501.55

  c.  Chantal Rowat:  $88,690.82

Funding provided as of the Petition Date totaled approximately $355,236.13. Mr. Honneger also committed to provide an additional $100,000 through a Court-approved debtor-in-possession loan facility (the "DIP Facility") pursuant to the DIP Financing Motion.

  10.  The parties entered into a written Liquor License and Lease Purchase Agreement (the "Agreement"), whereby Bato Catering, Inc. (the "Purchaser"), agreed to purchase substantially all of the Debtor's assets for the following consideration:

  a.  cash at closing in the amount of $480,000 (the "Purchase Price");

  b.  waiver of the Purchaser's prepetition claims totaling at least $355,236.13; and

  c.  waiver of any repayment of the DIP Facility in the amount of $100,000.

The Debtor accordingly values the purchase price at least $580,000 (the cash portion together with the waiver of the DIP Facility amount), plus the value of the prepetition claim that is being waived.

  11.  The Debtor's primary assets include its leasehold interest for its premises at 8 Holyoke Street, Cambridge, Massachusetts (the "Lease"), and its 7-Day All Alcoholic Beverages Common Victualler License (the "Liquor License"). The Purchaser is purchasing both assets, which will necessarily include the Debtor's assumption and assignment of the Lease as set forth below.

  12.  As a result of its mounting financial challenges, the Debtor has investigated all possible options for maximizing the value of operations for the benefit of creditors. After exploring all available options, the Debtor believes that the proposed sale will, among other

4

things, maximize company value by operating as a going concern until sale closing, preserve the jobs of the Debtor's employees, and will also provide the best possible recovery for creditors including, notably, to many employees that have claims for payment of back wages and related obligations.

## The Proposed Sale

13. The Debtor has agreed, subject to this Court's approval, to sell the Assets to the Purchaser upon the terms set forth in the Agreement. The specific assets to be sold to the Purchaser are listed in the Agreement.

14. As set forth in the Agreement, the Purchaser has agreed to pay the Debtor a purchase price of $480,000 (the "Purchase Price"). Concurrently therewith, the Purchaser has entered into a debtor-in-possession financing agreement with the Debtor (the "DIP Loan") in order to provide financial support to the Debtor during the sale process. As part of the proposed sale, the Purchaser has agreed to waive repayment of the DIP Loan upon consummation of the sale. The Purchaser has also agreed to waive its claims in connection with the Prepetition Loans.

15. In addition, both Ms. Trost and Ms. Nomejko will be provided with shares equal to five percent of the outstanding shares of the Purchaser as part of their transitional employment arrangements with the Purchaser. Ms. Trost's and Ms. Nomejko's ongoing involvement in the Purchaser's operation of the Debtor's business is critical to their willingness to proceed with the asset acquisition and, specifically, the Purchaser's obligation to close the sale is conditioned upon the Purchaser and Ms. Trost and Ms. Nomejko entering into an employment relationship on terms and conditions acceptable to all parties.

16. As disclosed above, the Purchaser also provided short-term prepetition advances to the Debtor in the aggregate amount of $355,236.13. The Purchaser's loans were made on an

unsecured basis.  The Debtor utilized the loans to sustain operations during the negotiations with the Purchaser, and also to pay for prepetition legal services and to provide counsel with a prepetition retainer.  The Purchaser's claims are undisputed by the Debtor.  The Purchaser has agreed to waive its claims in the event it consummates the proposed sale.  Alternatively, the Purchaser will retain its unsecured claim to be treated in accordance with payments to all other holders of non-priority unsecured claims.

17. The Debtor believes that the Purchase Price is reasonable and appropriate as a stalking horse offer.  Notably, the Debtor has received no similar or higher purchase offers.

18. The Debtor is providing notice of the Proposed Sale to (a) all parties who have expressed an interest in acquiring any of the Assets; (b) parties who had expressed an interest in buying or investing in the Debtor; and (c) all creditors listed in the Debtor's bankruptcy schedules.

19. The Debtor believes that a private sale of the Assets is most appropriate since the Assets consist of in-place, in-use restaurant equipment, inventory and related assets.  A liquidation of the assets in the context of a non-operating business would produce a much lower amount than the sale of the assets from a going concern.  Potential buyers of the Assets will be invited to conduct due diligence with the cooperation of the Debtor.  The Debtor submits that a public auction would be unlikely to produce a better result.

## **Secured Claims**[1]

20. Upon information and belief and with a full reservation of all rights regarding, among other things, defenses, setoff rights and potential avoidance claims, in accordance with MLBR 6004-1(a)(2)(A), the creditors that hold security interests in the Assets are set forth

---

[1] The Debtor reserves all rights regarding allowance of the secured claims identified herein including, without limitation, any counter-claims or rights of setoff that the Debtor may have.

6

below.  The Debtor conducted a recent review of the records of the UCC-1 financing statements at the Office of the Massachusetts Secretary of the Commonwealth, state and federal tax lien searches and a search of the Clerk's Office in Cambridge.

21. The following is a summary of the liens of record:

| Creditor | Lien Recording Date | Approximate Total Secured Portion of Claim |
|---|---|---|
| Cambridge Trust Company | 4/14/2006<br>8/2/2010<br>4/7/2011 | $104,780.01 |
| Corporation Service Company[2] | 11/21/2013 | $0.00 |
| Rewards Network Establishment Services, Inc. | 11/22/2013 | $67,999.12 |
| American Express Bank, FSB | 12/23/2013 | $29,156.01 |
| Marlin Business Bank | 4/24/2014 | $50,621.64 |
| Massachusetts Department of Revenue[3] | 3/17/2014<br>8/2/2014 | $0.00 |
| **TOTAL:** | | **$252,556.78** |

22. With a full reservation of rights regarding validity, allowability, perfection issues, and any and all defenses, assuming the above-noted secured claims are determined to be allowable, the Debtor expects that the Purchase Price described above will be sufficient to satisfy the claims of the secured creditors identified above.

23. To the extent that creditors and/or parties asserting any interest in the Assets fail to timely object to the Private Sale set forth in the attached Sale Notice, those parties shall be deemed to have consented to the sale of the Assets free and clear of any lien, claim, interest or encumbrance, with any proceeds sought therefrom by any such creditors or interested parties being chargeable on a pro-rata basis for the cost of the sale being incurred by the bankruptcy

---

[2] The obligation to Corporation Service Company has been satisfied in full.
[3] The obligations to Massachusetts Department of Revenue underlying these liens have been satisfied in full.

7

estate and the preservation of the Assets and for a proportionate share of the administrative expenses incurred by the estate in connection with the private sale, including compensation and expenses for the Debtor's professionals including, without limitation, Debtor's counsel and accountants, and any and all capital gains taxes that would otherwise be the estate's responsibility.

24. Additionally, pursuant to section 506(c) of the Bankruptcy Code, the Debtor intends to seek recovery of the reasonable and necessary costs and expenses for preserving or disposing of the Assets to the extent of any benefit conferred on any secured creditors, regardless of whether said Assets are sold or the creditor successfully objects to the intended Private Sale.

**Proposed Assumption and Assignment of Certain
Unexpired Leases and Executory Contracts**

25. The Agreement provides that certain executory contracts and/or unexpired leases will be assumed and assigned to the Purchaser under section 365 of the Bankruptcy Code (the "Proposed Contracts").

26. In order to assume and assign the Proposed Contracts to the Purchaser or to a third party counterofferor, the Debtor must, with respect to any of the Proposed Contracts under which there has been a default:

    a) cure, or provide adequate assurance that the Debtor will promptly cure, any defaults;

    b) compensate, or provide adequate assurance that the Debtor will promptly compensate, the non-debtor party or parties to the contracts for any actual pecuniary loss resulting from such default; and

    c) provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(A-C).

27. The Sale Notice provides notice to the counter-parties to the Proposed Contracts of the Debtor's intent to assume and assign the Proposed Contracts to the Buyer. Specifically,

8

*Exhibit A* to the Sale Notice includes a list of the Proposed Contracts which further provides information regarding (i) names and addresses of for the counter-parties to the Proposed Contracts, (ii) whether each of the Proposed Contracts is in default, and (iii) the actions required and or payments needed to "cure" any such defaults (for each applicable Proposed Contract, the "Cure Amount").

28. The Debtor will serve a copy of the Sale Notice on all counter-parties to the Proposed Contracts to be assumed and assigned and the deadline for such counter-parties to object to the assumption and assignment of the Proposed Contracts or to the Cure Amount will be set forth in the Sale Notice.

29. Any counteroffer seeking assignment of any executory contract must provide evidence of an ability to perform under the Proposed Contracts and address any Cure Amount.

## Sale Procedures

30. As set forth in the Sale Notice filed herewith, the Debtor has proposed certain procedures with respect to the proposed Private Sale (i.e., the Sale Procedures). In particular, the Sale Notice: (a) identifies the proposed Purchase Price for the Assets; (b) solicits higher and better offers; and (c) establishes a process for bidding.

31. Among other things, the proposed Sale Procedures provide that potential bidders must timely submit counter-offers, provide a deposit in the amount of twenty percent of the Purchase Price, and attend any sale hearing conducted by this Court.

32. Further, the Sale Notice also provides notice to creditors that the Debtor proposes to sell the Assets free and clear of liens, claims, interests, and encumbrances and provides an opportunity for creditors and interested parties to object to the proposed Private Sale.

9

33. In order to maximize the value of the Assets for the bankruptcy estate, to avoid diminution of those assets through unnecessary delay, and to move forward on the time-line required by the Purchaser, the Debtor requests that this Court: (a) find that the Sale Procedures set forth in the Sale Notice submitted herewith are appropriate and authorize and approve same; and (b) schedule a hearing on the Private Sale.

34. The Debtor has requested expedited determination, including the request that this Court schedule a hearing as soon as practicable regarding the approval of the Sale Procedures set forth in the within Sale Motion.

35. The APA provides for a minimum overbid of $580,000 (the "Minimum Overbid") and a minimum deposit to accompany any such overbid of $116,000 (the "Required Deposit"). The Minimum Overbid takes into account the value of the Purchaser's DIP Loan facility and the necessity for the Debtor to repay the DIP Loan in the event the sale is not consummated with the Purchaser.

36. The Debtor believes that the Minimum Overbid and the Required Deposit are reasonable in this situation. Among other things, the Buyer has assumed some risks and incurred substantial costs in order to: (a) preserve value for the bankruptcy estate; (b) fund the prepetition legal expenses and retainer required by Debtor's counsel in order to commence this bankruptcy proceeding; (c) financially sustain the Debtor's operations postpetition during the sale period; and (c) negotiate and submit a stalking horse bid. In light of the risks and costs incurred by the Buyer, the Debtor has determined that the Minimum Overbid and the Required Deposit are reasonable and appropriate and, therefore, requests that this Court authorize same as part of the Sale Procedures.

37. The Debtor submits that the Private Sale contemplated herein is in the best interest of the Estate.

WHEREFORE, the Debtor requests that this Court:

a) Schedule a hearing on the Sale Procedures as soon as practicable;

b) Schedule a hearing on the proposed Private Sale on or before January 1, 2015;

c) Authorize the Debtor to sell the Assets described in the Sale Notice filed herewith, free and clear of all liens, claims, interests, and encumbrances by any entity, with any and all such interests in the Assets, when established, attaching to the proceeds realized from the sale of the Assets in the same order of priority subject, if necessary, to later determination by the Bankruptcy Court of the validity, extent and perfection of such interest;

d) Approve and establish the Cure Amounts and authorize the Debtor to assume and assign the Proposed Contracts, subject to compliance section 365 of the Bankruptcy Code;

e) Require any creditor and/or party in interest claiming an interest in the Assets be liable to the estate for (1) the pro-rata cost of the private sale of the Assets, (2) the costs incurred by the Debtor in the preservation of the Assets, and (3) a proportionate share of the administrative expenses incurred by the Debtor and its counsel in preparing and conducting the Private Sale;

f) Find that the Sale Notice filed herewith is appropriate in form and content for purposes of noticing interested parties and creditors;

g) Authorize and approve the Sale Procedures proposed herein and set forth in the Sale Notice; and

h) Grant such other and further relief as just and necessary.

Respectfully submitted,

SANDRINE'S LIMITED LIABILITY COMPANY,
Chapter 11 Debtor-in-Possession,

By its attorneys,

11

/s/  Alex F. Mattera
Alex F. Mattera, BBO No. 641760
Demeo, LLP
200 State Street
Boston, MA  02109
Telephone:  (617) 263-2600
Facsimile:  (617) 263-2300
Email:       AMattera@DemeoLLP.com

Dated:  December 10, 2014