UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re<br><br>　　SANDRINE'S LIMITED LIABILITY COMPANY,<br><br>　　　　　　Debtor. | Chapter 11<br>Case No. 14-15702-WCH |

**FINAL ORDER: (A) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING AND GRANTING SECURITY INTERESTS PURSUANT TO 11 U.S.C. SECTION 364; AND (B) AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL**

THIS MATTER having come before this Court upon the motion (the "DIP Motion") by Sandrine's Limited Liability Company, the chapter 11 debtor and debtor-in-possession herein (the "Debtor"), seeking, among other things, entry of an final order (the "Final Order") authorizing the Debtor to:

　　　　(i)　　Obtain credit and incur debt, pursuant to sections 363 and 364(c) of the Bankruptcy Code, on an interim basis for a period (the "Interim Period") from the commencement of the case through and including the date of the Final Hearing (as defined below) in the amount of $14,000 per week through December 31, 2014, and in the amount of $15,000 per week thereafter until such time as the sale (as described more fully below) is consummated, pursuant to terms and conditions more fully described herein, secured by valid, perfected, and enforceable liens (as defined in section 101(37) of title 11 of the United States Code (the "Bankruptcy Code")) on property of the Debtor's estate pursuant to section 364(c)(3) of the Bankruptcy Code, subject to certain liens and claims and on the terms and conditions contained herein;

1

(ii) (a) Establish that financing arrangement (the "DIP Facility") pursuant to (I) that certain Secured Debtor-In-Possession Financing Agreement by and among the Debtor as borrower (the "Borrower") and Bato Catering, Inc., as lender (the "DIP Lender"), and (II) all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of the DIP Lender, including, without limitation, the promissory notes, guaranties, security agreements, and Uniform Commercial Code ("UCC") financing statements and all other related agreements, documents, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, modified or supplemented and in effect from time to time, the "DIP Financing Agreement")[1]; and (b) incur the "Obligations" under and as defined in the DIP Financing Agreement (collectively, the "DIP Obligations");

(iii) Authorize the use of the proceeds of the DIP Facility in each case in a manner consistent with the terms and conditions of the DIP Financing Agreement, and in accordance with the Budget (as defined below) solely for (a) working capital and general corporate purposes and (b) payment of costs of administration of this case, to the extent set forth in the Budget and/or this Final Order.

(iv) Grant, pursuant to sections 364(c)(3) of the Bankruptcy Code, the DIP Lender valid, perfected, and enforceable liens upon all of the Debtor's real and personal property as provided in and as contemplated by this Final Order, the DIP Facility, and the DIP Financing Agreement;

(v) Modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreement and this Final Order;

---

[1] Except as otherwise defined herein, all defined terms used herein shall have the meanings ascribed thereto in the DIP Financing Agreement.

   (vi) Grant the Debtor authority to use the Cash Collateral of its senior secured creditors, Cambridge Trust Company, Rewards Network Establishment, and American Express Merchant Services (collectively, the "Secured Parties");

   (vii) Grant the Secured Parties, *nunc pro tunc* to the Petition Date, replacement liens to the same extent, validity and priority as the Secured Parties' prepetition liens; and

   (ix) Waive the ten-day stay provisions of Federal Rule of Bankruptcy Procedure 6004(h).

  The Bankruptcy Court having considered the DIP Motion, the Declaration of Gwyneth B. Trost in support of the Debtor's first-day motions and orders, the exhibits attached thereto, and the Debtor's representations with respect to the terms and conditions of the DIP Facility and the DIP Financing Agreement, and the evidence submitted at the hearing on the Interim Order as set forth herein (the "Interim Hearing"); and in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Massachusetts Local Bankruptcy Rules (the "Local Rules"), due and proper notice of the DIP Motion and the Interim Hearing having been given; an Interim Hearing having been held and concluded on December 16, 2014; an Interim Order having been entered on December 19, 2014, following the Interim Hearing; and a final hearing (the "Final Hearing") having been held and concluded on February 11, 2015; and it appearing that approval of the final relief requested in the DIP Motion is fair and reasonable and in the best interests of the Debtor, its creditors, the estate, and equity holders, and is essential for the continued operation of the Debtor's business; and it further appearing that the Debtor is unable to secure unsecured credit for money borrowed allowable as an administrative expense under Bankruptcy Code section 503(b)(1); and all objections, including the limited objection of Cambridge Trust Company, to the entry of this

Final Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING BY THE DEBTOR, THE BANKRUPTCY COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

 A. <u>Petition Date</u>. On December 10, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (Central Division). Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its affairs as debtor-in-possession.

 B. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. sections 157(b) and 1334, and over the parties and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. section 157(b)(2). Venue for the case and proceeding on the DIP Motion is proper in this district pursuant to 28 U.S.C. sections 1408 and 1409.

 C. <u>Committee Formation</u>. No official committee of unsecured creditors has been appointed in this case.

 D. <u>Notice</u>. The Final Hearing was held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 4001-2. Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtor, whether by telecopy, email, overnight courier, or hand delivery, to certain parties in interest, including: (i) the Office of the United States Trustee; (ii) the Internal Revenue Service; (iii) the Massachusetts Department of Revenue; (iv) secured creditors asserting claims against any of the Debtor's assets; (v) the Debtor's twenty (20) largest unsecured creditors; and (vi) the proposed DIP Lender. Under the circumstances, such notice of the Final Hearing and the relief requested in the DIP Motion is due and sufficient notice and

complies with sections 102(1) and 364(c) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014, and 9019 and the Local Rules.

   E. <u>Findings Regarding the Postpetition Financing</u>.

     (i) <u>Need for Postpetition Financing</u>. An immediate need exists for the Debtor to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of the estate. The ability of the Debtor to finance its operations, to preserve and maintain the value of the Debtor's business and assets and maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtor, the estate, creditors and equity holders and the possibility for a successful reorganization or sale of the Debtor's assets as a going concern or otherwise.

     (ii) <u>No Credit Available on More Favorable Terms</u>. The Debtor has been unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtor is also unable to obtain secured credit, allowable only under Bankruptcy Code section 364(c)(3) on more favorable terms and conditions than those provided in the DIP Financing Agreement and this Final Order. The Debtor is unable to obtain credit for borrowed money without granting to the DIP Lenders the DIP Protections (as defined below).

   F. <u>Use of Proceeds of the DIP Facility</u>. Proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreement, and strictly in accordance with the Budget (as defined below), solely for (a) working capital and general corporate purposes and (b) payment of costs of administration of the case, to the extent set forth in the Budget and/or this Final Order.

G. <u>Extension of Financing</u>. The DIP Lender has indicated a willingness to provide financing to the Debtor in accordance with the DIP Financing Agreement and subject to (i) the entry of this Final Order, and (ii) findings by the Bankruptcy Court that such financing is essential to the Debtor's estates, that the DIP Lender is a good faith financier, and that the DIP Lender's claims, security interests and liens, and other protections granted pursuant to this Final Order and the DIP Facility will not be affected by any subsequent reversal, modification, vacatur, or amendment of the Interim Order, this Final Order, or any other order, as provided in section 364(e) of the Bankruptcy Code.

H. <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>. The terms and conditions of the DIP Facility and the DIP Financing Agreement, and any fees paid and to be paid thereunder are fair, reasonable, and the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Facility was negotiated in good faith and at arms' length between the Debtor and the DIP Lender. Use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, the consequence of which is that the DIP Lender are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

I. <u>Relief Essential; Best Interest</u>. The relief requested in the DIP Motion is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and personal property. It is in the best interest of Debtor's estates to be allowed to establish the DIP Facility contemplated by the DIP Financing Agreement.

6

J.      Entry of Final Order.  For the reasons stated above, the Debtor has requested entry of this Final Order and waiver of any of the stay provisions of Bankruptcy Rule 6004(h).

NOW, THEREFORE, on the DIP Motion of the Debtor and the record before this Court with respect to the DIP Motion, and with the consent of the Debtor and the DIP Lender to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

IT IS ORDERED that:

1.      Motion Granted.  The DIP Motion is granted in accordance with the terms and conditions set forth in this Final Order and the DIP Financing Agreement.

2.      DIP Financing Agreement.

(a)      Approval of Entry into DIP Financing Agreement.  The Debtor is expressly and immediately authorized, empowered, and directed to execute and deliver the DIP Financing Agreement and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Financing Agreement, and to execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens (as defined below) described in and provided for by this Final Order and the DIP Financing Agreement.  The Debtor is hereby authorized, empowered, and directed to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the DIP Financing Agreement and all other documents comprising the DIP Facility as such become due, including, without limitation, closing fees, facility fees, letter of credit fees, and reasonable attorneys', financial advisors' and accountants' fees and disbursements as provided for in the DIP Financing Agreement which amounts shall not otherwise be subject to approval of this Court; *provided*, *however*, that unresolved disputes as to the reasonableness of any professional fees and expenses

may be determined by the Bankruptcy Court. Upon execution and delivery, the DIP Financing Agreement shall represent the valid and binding obligation of the Debtor enforceable against the Debtor in accordance with its terms.

      (b)     Authorization to Borrow. In order to enable it to continue to operate its business, subject to the terms and conditions of this Final Order, the DIP Financing Agreement, documents comprising the DIP Facility, and the Budget (as defined below), the Debtor is hereby authorized under the DIP Facility to request extensions of credit on a weekly basis in the amount of $14,000 per week through December 31, 2014, and in the amount of $15,000 per week thereafter until such time as the contemplated sale has been consummated, in accordance with the terms and conditions of the DIP Financing Agreement.

      (c)     Application of DIP Proceeds. The Debtor is authorized to borrow under the DIP Facility, and the proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreement, and in accordance with the Budget (as defined below) solely for (a) working capital and general corporate purposes and (b) payment of costs of administration of the case, to the extent set forth in the Budget and/or this Final Order.

      (d)     Postpetition Liens. Effective immediately, upon the execution of this Final Order, the DIP Lender is hereby granted pursuant to sections 361, 362 and 364(c)(3) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests and liens (collectively, the "DIP Liens"), junior only to those secured liens on subject collateral as existed and were valid, perfected and enforceable as of the Petition Date, upon and to all presently owned and hereafter acquired assets and real and

8

personal property of the Debtor, including, without limitation, the following (collectively, the "Collateral"):

(i) Accounts, including Health-Care-Insurance Receivables;

(ii) Certificated Securities;

(iii) Chattel Paper, including Electronic Chattel Paper;

(iv) Computer Hardware and Software and all rights with respect thereto, including, any and all licenses, options, warranties, service contracts, program services, test rights, maintenance rights, support rights, improvement rights, renewal rights and indemnifications, and any substitutions, replacements, additions or model conversions of any of the foregoing;

(v) Contract Rights;

(vi) Commercial Tort Claims;

(vii) Deposit Accounts;

(viii) Documents;

(ix) Financial Assets;

(x) General Intangibles, including Payment Intangibles and Software;

(xi) Goods (including all of its Equipment, Fixtures and Inventory), and all embedded software, accessions, additions, attachments, improvements, substitutions and replacements thereto and therefor;

(xii) Instruments;

(xiii) Intellectual Property;

(xiv) Investment Property;

(xv) Money (in every jurisdiction whatsoever);

(xvi) Letter of Credit Rights;

(xvii) Security Entitlements;

(xviii) Supporting Obligations;

(xix) Uncertificated Securities;

(xx) to the extent not included in the foregoing, other personal property of any kind or description; and

(xxi) all proceeds from the sale or other disposition of leases and leasehold interests;

together with all books, records, writings, data bases, information and other property relating to, used or useful in connection with, or evidencing, embodying, incorporating or referring to any of the foregoing, and all Proceeds, products, offspring, rents, issues, profits and returns of and from any of the foregoing. *Provided*, *however*, that the Collateral shall not include (a) any rights or property acquired under a lease, contract, property rights agreement, or license, the grant of a security interest in which shall constitute or result in (i) the abandonment, invalidation, or unenforceability of any right, title or interest of the Borrower therein, or (ii) a breach or termination pursuant to the terms of, or a default under, any lease, contract, property rights agreement, or license (other than to the extent that any restriction on such assignment would be rendered ineffective pursuant to Sections 9-406, 9-407, 9-408 or 9-409 of the UCC (or any successor provision or provisions) of any relevant jurisdiction or any other applicable law or principles of equity), *provided that* the Proceeds from any such lease, contract, property rights agreement or license shall not be excluded from the definition of Collateral to the extent that the assignment of such Proceeds is not prohibited; (b) any avoidance action under chapter 5 of the Bankruptcy Code or the proceeds thereof, other than proceeds of any avoidance action brought pursuant to section 549 of the Bankruptcy Code to recover any postpetition transfer of Collateral; and (b) a lien or security interest directly on any lease or leasehold interest, but only the proceeds thereof.

(e) <u>DIP Lien Priority</u>.  The DIP Liens to be created and granted to the DIP Lender, as provided herein, (a) are created pursuant to section 364(c)(3) of the Bankruptcy Code, (b) are valid, perfected and unavoidable, and (c) shall secure all DIP Obligations.

(f) <u>Enforceable Obligations</u>.  The DIP Financing Agreement shall constitute and evidence the valid and binding obligations of the Debtor, enforceable against the Debtor, the estate, and any successors thereto and the Debtor's creditors, in accordance with its terms.

3. <u>Postpetition Lien Perfection</u>.

(a) This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may

otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or credit card agreement) to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein.  Notwithstanding the foregoing, the DIP Lender may, in its sole discretion, file such financing statements, mortgages, if any, notices of liens and other similar documents, and all such financing statements, mortgages, if any, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of this case.

(b)     The Debtor shall execute and deliver to the DIP Lender all such financing statements, mortgages, if any, notices and other documents as the DIP Lender may reasonably request to evidence, confirm, validate, or perfect, or to insure the contemplated priority of, the DIP Liens granted pursuant hereto.  The DIP Lender, in its discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order.

(d)     Subject to the terms and provisions of this Final Order, the automatic stay imposed under Bankruptcy Code Section 362(a) is hereby modified pursuant to the terms of the DIP Financing Agreement as necessary to: (1) permit the Debtor to grant the DIP Liens and to incur all liabilities and obligations to the DIP Lender under the DIP Financing Agreement and this Final Order; (2) permit the DIP Lender to file, record, and otherwise perfect the liens and security interests granted and created herein; and (3) authorize the DIP Lender to retain and apply payments hereunder.

4. <u>Collateral Rights</u>.  Unless the DIP Lender has provided its prior written consent or all DIP Obligations have been indefeasibly paid in full in cash (or will be indefeasibly paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below), all commitments to lend have terminated, and all indemnity obligations under the DIP Financing Agreement have been cash secured, there shall not be entered in this proceeding, or in any successor case, any order which authorizes any of the following:

(a) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral and/or entitled to priority administrative status which is equal or senior to those granted to the DIP Lender; or

(b) the Debtor's return of goods constituting Collateral pursuant to section 546(h) of the Bankruptcy Code.

5. <u>Proceeds of Subsequent Financing</u>. Without limiting the provisions and protections of paragraph 4 above, if at any time prior to the repayment in full of all DIP Obligations and the termination of the DIP Lender's obligations to make loans and advances under the DIP Facility, including subsequent to the confirmation of any chapter 11 plan (the "Plan") with respect to the Debtor, the Debtor's estate, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) in violation of the DIP Financing Agreement, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender to be applied in reduction of the DIP Obligations.

6. <u>Disposition of Collateral</u>.  The Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Collateral, or assume, reject, or assign any leasehold

12

interest without the prior written consent of the DIP Lender (and no such consent shall be implied, from any other action, inaction, or acquiescence by the DIP Lender) or an order of the Bankruptcy Court, except for sales of the Debtor's inventory in the ordinary course of business or except as otherwise provided for in the DIP Financing Agreement and this Final Order and as approved by the Bankruptcy Court, except that the rights and remedies of the Secured Parties shall be fully preserved and unaffected by this Final Order.

7. <u>Events of Default</u>.  The occurrence and continuance of any of the following events shall constitute an event of default ("Event of Default") under this Final Order:

    (a)    the failure by the Debtor to comply with any term of this Final Order;

    (b)    the occurrence and continuance of an Event of Default under, and as defined in, the DIP Financing Agreement; or

    (c)    the entry of an order by the Bankruptcy Court dismissing or converting the Debtor's case without the consent of the DIP Lender.

Unless and until (i) the DIP Obligations have been indefeasibly repaid in full, all commitments to lend have irrevocably terminated, and all DIP Obligations which survive such termination have been cash secured to the reasonable satisfaction of the DIP Lender, the protections afforded to the DIP Lender pursuant to this Final Order and under the DIP Financing Agreement, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting this case into a successor case, and the DIP Protections shall continue in this proceeding and in any successor case, and such DIP Protections shall maintain their priority as provided by this Final Order.

8. <u>Rights and Remedies upon Event of Default.</u>

(a) Subject to this Final Order, the DIP Lender exercises any of its rights and remedies upon the occurrence and continuance of an Event of Default, the DIP Lender may retain one or more agents to sell, lease, or otherwise dispose of the Collateral subject to the valid and perfected liens of senior secured creditors and their right to object or take any other action permitted by law or equity. In any exercise of their rights and remedies upon the occurrence and continuance of an Event of Default under the DIP Financing Agreement, the DIP Lender is authorized to proceed under or pursuant to the DIP Financing Agreement and this Final Order.

(b) Without limiting the foregoing, in the exercise of the DIP Lender's rights and remedies upon the occurrence and continuance of an Event of Default, and subject to this Final Order, the DIP Lender may proceed under or pursuant to the DIP Financing Agreement.

(c) All liens of any senior secured creditors shall attach to all proceeds realized from the sale or other disposition of the Collateral, and any proceeds shall only be turned over to the DIP Lender for application to the DIP Obligations in the event such senior secured creditors claims are paid in full, including any attorney's fees and interest chargeable under Bankruptcy Code section 506(b).

(d) Nothing included herein shall prejudice, impair, or otherwise affect the rights of the DIP Lender to seek any other or supplemental relief in respect of the Debtor, nor the rights of the DIP Lender, as provided in the DIP Financing Agreement and this Final Order, to suspend or terminate the making of loans under the DIP Financing Agreement.

9. <u>Other Rights and Obligations</u>.

(a) <u>Good Faith under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Final Order</u>. Based on the findings set forth in this Final Order and

in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Final Order, in the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of this or any other Court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such modification, amendment, or vacation shall affect the validity and enforceability of any advances made hereunder or lien or priority authorized or created hereby. Notwithstanding any such modification, amendment, or vacation, any claim granted to the DIP Lender hereunder arising prior to the effective date of such modification, amendment, or vacation of any DIP Protections granted to the DIP Lender shall be governed in all respects by the original provisions of this Final Order.  Since the loans made pursuant to the DIP Financing Agreement are made in reliance on this Final Order, the obligations owed the DIP Lender prior to the effective date of any stay, modification, or vacation of this Final Order cannot, as a result of any subsequent order in this case, or in any successor case, be subordinated or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this Final Order and/or the DIP Financing Agreement.

      (b)    <u>Binding Effect</u>.  The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtor and their successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) whether in this case, in any successor case, or upon dismissal of this case or any successor case.

      (c)    <u>No Waiver</u>.  The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under the DIP Financing Agreement, the DIP Facility or this Final Order, as applicable, shall not constitute a waiver of any of the rights of the DIP Lender

hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (1) the rights of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the DIP Lender to (i) request conversion of this case to a case under chapter 7, dismissal of this case, or the appointment of a trustee in this case (but only in the event an Event of Default has occurred and is continuing), or (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan; or (2) any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender.

(d) <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

(e) <u>Amendment</u>.  The Debtor and the DIP Lender may amend or waive any provision of the DIP Financing Agreement, *provided that* such amendment or waiver, is both non-prejudicial to the rights of third parties and is not material.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by on behalf of the Debtor and the DIP Lender and approved by the Bankruptcy Court.

(f) <u>Survival of Final Order</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in this case, or (ii) converting this case to a case under chapter 7 of the Bankruptcy Code, or (iii) dismissing this case, or (iv) withdrawing of the reference of this case from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of this case in this Court, and the terms and provisions of this Final Order as well as the DIP Protections

granted pursuant to this Final Order and the DIP Financing Agreement shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections shall maintain their priority as provided by this Final Order until all the obligations of the Debtor to the DIP Lender pursuant to the DIP Financing Agreement have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms). The DIP Obligations shall not be discharged by the entry of an order confirming a Plan, the Debtor having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code. The Debtor shall not propose or support any Plan that is not conditioned upon the payment in full in cash of all of the DIP Obligations, on or prior to the earlier to occur of (i) the effective date of such Plan and (ii) the Termination Date.

(g) <u>Inconsistency</u>. In the event of any inconsistency between the terms and conditions of the DIP Financing Agreement and of this Final Order, the provisions of this Final Order shall govern and control.

(h) <u>Enforceability</u>. This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(i) <u>Objections Overruled</u>. All objections to the DIP Motion to the extent not withdrawn or resolved are hereby overruled.

(j) <u>No Waivers or Modification of Final Order</u>. The Debtor irrevocably waives any right to seek any modification or extension of this Final Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Lender.

(k)     Waiver of the Ten (10) Day Stay Under Bankruptcy Rule 6004(h). The ten-day stay provisions of Bankruptcy Rule 6004(h) are waived and shall not apply to this Final Order.

11.     Cash Collateral. The Debtor is hereby authorized and permitted to utilize any proceeds of its sales in the ordinary course of business, including the Cash Collateral, if any, of the Secured Parties. As adequate protection of the interests of the Secured Parties, to the extent of any diminution in the value of the Collateral (including Cash Collateral) from and after the Petition Date, the Secured Parties shall be granted, pursuant to sections 361, 363, and 364 of the Bankruptcy Code, replacement security interests and liens upon all the Collateral.

12.     Secured Parties' Replacement Liens.

(a)     Replacement Liens. Notwithstanding anything in section 552 of the Bankruptcy Code to the contrary, and in addition to its liens and security interests under the existing agreements between the Debtor and the Secured Parties, as adequate protection, the Secured Parties shall have and are hereby granted *nunc pro tunc* to the Petition Date (effective and continuing without the necessity of the execution, filing and/or recordation of mortgages, deeds of trust, security agreements, control agreements, pledge agreements, financing statements or otherwise), valid and perfected security interests and liens (the "Secured Parties' Replacement Liens") in all of the Debtor's now owned or after acquired personal property of the types described in the applicable security instruments between such Secured Parties and the Debtor, including without limitation the following types of property (whether owned or existing as of the Petition Date or thereafter acquired): profits and other revenues arising out of the operations of the Debtor's business; all cash; accounts; chattel paper; deposit accounts; documents; equipment; fixtures; general intangibles, including all trademarks, trade names, good will, and other

18

intellectual property, goods, including accessions and goods with which such goods are commingled; instruments; inventory; investment property; letter-of-credit rights, payment intangibles, promissory notes; software; and all replacements, supporting obligations, offspring, products, and proceeds of the foregoing (collectively, the "Secured Parties' Replacement Collateral"). The Secured Parties' Replacement Liens will be evidenced by the parties' existing security instruments and loan documents and this Final Order. The Secured Parties' Replacement Liens will secure all obligations owing to the Secured Parties. In addition, the Secured Parties will retain, to the same extent, validity and priority, all of their existing liens and security interests in all of the Collateral, including, without limitation, the liens and security interests described above and any rights of setoff and/or recoupment. The Secured Parties' Replacement Liens shall be to the same extent, validity and priority as the Secured Parties' prepetition liens.

(b)     <u>Perfection of Replacement Liens</u>.  The Secured Parties' Replacement Liens in the Secured Parties' Replacement Collateral granted hereby shall be valid, perfected, enforceable and effective, to the same extent, validity and priority as its prepetition liens against the Debtor and its successors and assigns, including any trustee or receiver in these or any superseding chapter 7 cases, without any further action by the Debtor or the Secured Parties and without the execution, delivery, filing or recordation of any control agreements, promissory notes, financing statements, mortgages, security agreements or other documents. The Debtor acknowledges that the Secured Parties may, but are not required to, file any financing statement to perfect the Secured Parties Replacement Liens granted by this Final Order.

      (l)    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated:  February 18, 2015

*[signature]*   02/18/2015

Honorable William C. Hillman
United States Bankruptcy Court

20